1

2

3                                                      **E-filed 7/25/07**

4

5

6

7

8

9                           NOT FOR CITATION

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

WILLIAM SIZEMORE,                    )     No. C 05-5182 JF (PR)
13                                   )
          Petitioner,                )
14                                   )     ORDER DENYING PETITION
                                     )     FOR WRIT OF HABEAS
15    vs.                            )     CORPUS
                                     )
16   A.P. KANE, Warden, et al.,      )
                                     )
17          Respondents.             )
     _____)

18

19       Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus

20   pursuant to 28 U.S.C. § 2254 challenging the decision of the California Board of Prison

21   Terms ("Board") denying him parole.  The Court ordered Respondent to show cause why

     the petition should not be granted.  Respondent has filed an answer addressing the merits

22   of the petition, and Petitioner has filed a traverse.  Having reviewed the briefs and the

23   underlying record, the Court concludes that Petitioner is not entitled to relief based on the

24   claims presented and will deny the petition.

25   \\\

26

27

28

# BACKGROUND[1]

Following his 1984 conviction for first degree murder, vehicle theft, and robbery, Petitioner was sentenced to a term of twenty-eight years-to-life in state prison.  The facts of the commitment offense are as follows.  On October 20, 1983, Petitioner and Mike Chandler met James Martin in Medford, Oregon.  The three were joined by Dwane Reed, a person Petitioner and Chandler had met in California a few days earlier.  All four spent the night of October 20th in Martin's Winnebago.  Petitioner and Chandler discussed "rolling" Martin to steal Martin's jewelry, and offered a ring to Reed if he helped them. Petitioner and Chandler also expressed their desire to have the Winnebago.  The next day Martin, still accompanied by Petitioner and Chandler, dropped Reed off in Phoenix, Oregon and drove south on Interstate 5.  Early the next morning, Petitioner was driving the Winnebago and pulled off the interstate, drove down a dirt road into an orchard and stopped the Winnebago.  All three men exited the Winnebago.  Chandler then grabbed Martin, dragged him a few feet, threw him against a tree and shot him three times.  Resp. Answer, Ex. 2 at 9-12.

Petitioner and Chandler took the Winnebago to Southern California and then to Columbus, Ohio.  During their travel, the two used Martin's credit card for fuel until a service station attendant in Des Moines, Iowa refused to honor the card.  Petitioner struck the attendant with a blunt object, and the two men struggled until the attendant saw that Chandler had a gun.  Petitioner forced the attendant to open the station's cash drawer and took the money.  Petitioner and Chandler then kidnapped the attendant and robbed him while he was in the Winnebago.  After driving for about twenty minutes, Petitioner and Chandler exited the Winnebago, and the attendant drove the Winnebago away.  Id. at 12-14.  Petitioner and Chandler then kidnapped a farmer and drove his truck to the interstate highway.  As they were driving, they realized they were being followed by police officers.  Petitioner threw the gun out the window and stopped the car; shortly thereafter

---

[1] The underlying facts are drawn from the Parole Suitability Hearing Transcript (September 28, 2004).  Resp. Answer, Ex. 2.

1    Petitioner and Chandler were arrested. Id. at 14-15.

2        The subject parole suitability hearing occurred on September 28, 2004. Following

3    the Board's denial of parole, Petitioner filed a petition for a writ of habeas corpus in the

4    Stanislaus Superior Court; the petition was denied on June 13, 2005. Petitioner then

5    sought relief in the California Court of Appeal, which was summarily denied on August

6    11, 2005. The California Supreme Court summarily denied habeas relief on November 2,

7    2005. Petitioner filed the instant federal petition on December 14, 2005.

8                                   **DISCUSSION**

9    **A. Standard of Review**

10        This Court may entertain a petition for writ of habeas corpus "in behalf of a person

11   in custody pursuant to the judgment of a State court only on the ground that he is in

12   custody in violation of the Constitution or laws or treaties of the United States." 28

13   U.S.C. § 2254(a). Under the AEDPA, a district court may not grant a petition challenging

14   a state conviction or sentence on the basis of a claim that was reviewed on the merits in

15   state court unless the state court's adjudication of the claim: "(1) resulted in a decision

16   that was contrary to, or involved an unreasonable application of, clearly established

17   Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a

18   decision that was based on an unreasonable determination of the facts in light of the

19   evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong

20   applies both to questions of law and to mixed questions of law and fact, Williams (Terry)

21   v. Taylor, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based

22   on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

23        "Under the 'contrary to' clause, a federal habeas court may grant the writ if the

24   state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

25   question of law or if the state court decides a case differently than [the] Court has on a set

26   of materially indistinguishable facts." Williams (Terry), 529 U.S. at 412-13. A state

27   court decision is an "unreasonable application of" Supreme Court authority, falling under

28   the second clause of § 2254(d)(1), if the state court correctly identifies the governing

1  legal principle from the Supreme Court's decisions but "unreasonably applies that

2  principle to the facts of the prisoner's case." <u>Id.</u> at 413.

3       The federal court on habeas review may not issue the writ "simply because that

4  court concludes in its independent judgment that the relevant state-court decision applied

5  clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411.  Under 28 U.S.C. §

6  2254(d)(2), a state court decision "based on a factual determination will not be overturned

7  on factual grounds unless objectively unreasonable in light of the evidence presented in

8  the state-court proceeding." <u>Miller-El</u>, 537 U.S. at 340; <u>see also</u> <u>Torres v. Prunty</u>, 223

9  F.3d 1103, 1107 (9th Cir. 2000).  The court must presume correct any determination of a

10  factual issue made by a state court unless the petitioner rebuts the presumption of

11  correctness by clear and convincing evidence.  <u>See</u> 28 U.S.C. § 2254(e)(1).

12       Where, as here, the highest state court to consider the petitioner's claims issued a

13  summary opinion which does not explain the rationale of its decision, federal review

14  under § 2254(d) is of the last state court opinion to reach the merits. <u>See</u> <u>Ylst v.</u>

15  <u>Nunnemaker</u>, 501 U.S. 797, 801-06 (1991); <u>Bains v. Cambra</u>, 204 F.3d 964, 970-71, 973-

16  78 (9th Cir. 2000).  In this case, the last state court opinion to address the merits of

17  Petitioner's claim is the opinion of the Stanislaus Superior Court.

18  **B.  Subject Matter Jurisdiction**

19       Respondent argues that this Court does not have subject matter jurisdiction over

20  the instant petition because California inmates have no federally-protected liberty interest

21  in parole under California Penal Code section 3041.  Resp. Answer at 4.  Respondent

22  acknowledges the Ninth Circuit's decision in <u>Sass v. California Bd. of Prison Terms</u>, 461

23  F.3d 1123 (9th Cir. 2006), but preserves this argument because a petition for rehearing

24  was pending at the time Respondent filed his Answer to the instant habeas petition.  <u>Id.</u>

25       Although a convicted person has no inherent or constitutional right to early release

26  on parole, a state's statutory parole scheme may create "a presumption that parole release

27  will be granted" if it uses mandatory language.  <u>Greenholtz v. Inmates of Nebraska Penal</u>

28  <u>& Corr. Complex</u>, 442 U.S. 1, 12 (1979).  The Ninth Circuit made clear that because

1  California's parole statute uses mandatory language, "California inmates continue to have

2  a liberty interest in parole after In re Dannenberg, 34 Cal.4th 1061, 23 Cal.Rptr.3d 417,

3  104 P.3d 783 (2005)."  Sass, 461 F.3d at 1125 (finding that district court misread

4  Dannenberg which did not hold that there is no constitutionally protected liberty interest

5  in parole – but upholding denial of petition on other grounds).  Because controlling Ninth

6  Circuit authority holds that Petitioner does have a constitutionally protected liberty

7  interest in release on parole, this Court has subject matter jurisdiction pursuant to 28

8  U.S.C. § 2254 to decide whether Petitioner's Fourteenth Amendment right to due process

9  was violated by the Board's determination that Petitioner was not suitable for parole.

10  **C. Petitioner's Due Process Claims**

11      1.  The Board's Decision Was Based on "Some Evidence"

12      Petitioner asserts that his right to due process was violated by the Board's decision

13  denying him parole because there is no evidence to support the Board's finding that he is

14  unsuitable for parole.  See Petition at 12.  Petitioner maintains that the Board's denial of

15  parole impermissibly was based solely on the circumstances of the underlying offense and

16  thus violated his right to due process.  Id. at 6.  Because California prisoners have a

17  constitutionally protected liberty interest in release on parole, they cannot be denied a

18  parole date without the procedural protections necessary to satisfy due process.

19  McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002).

20      A parole board's decision must be supported by "some evidence" to satisfy the

21  requirements of due process.  Sass, 461 F.3d at 1128-29 (adopting some evidence

22  standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-

23  55 (1985)).  The standard of "some evidence" is met if there was some evidence from

24  which the conclusion of the administrative tribunal could be deduced.  See Hill, 472 U.S.

25  at 455.  An examination of the entire record is not required, nor is an independent

26  assessment of the credibility of witnesses or weighing of the evidence.  Id.  The relevant

27  question is whether there is any evidence in the record that could support the conclusion

28  reached by the Board.  See id.  Accordingly, if the Board's determination of parole

1  suitability is to satisfy due process, there must be some evidence, with some indicia of

2  reliability, to support the decision.  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir.

3  2005); McQuillion, 306 F.3d at 904.  Petitioner argues correctly that pursuant to Ninth

4  Circuit case law, the seriousness of the commitment offense fades over time as a predictor

5  of suitability.  See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003) ("A continued

6  reliance in the future on an unchanging factor, the circumstance of the offense and

7  conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the

8  prison system and could result in a due process violation.").

9        In assessing whether or not there is "some evidence" supporting the Board's denial

10  of parole, this Court must consider the regulations that guide the Board in making its

11  parole suitability determinations.  California Code of Regulations, title 15, section

12  2402(a) states that "[t]he panel shall first determine whether the life prisoner is suitable

13  for release on parole.  Regardless of the length of time served, a life prisoner shall be

14  found unsuitable for and denied parole if in the judgment of the panel the prisoner will

15  pose an unreasonable risk of danger to society if released from prison."  The regulations

16  direct the Board to consider "all relevant, reliable information available."  Cal.Code of

17  Regs., tit. 15, § 2402(b).  Further, they list sets of circumstances tending to indicate

18  whether or not an inmate is suitable for parole.  Cal.Code of Regs., tit. 15, § 2402(c)-(d).[2]

19        The regulations also contain a matrix of suggested base terms depending on the

20  murder degree and the circumstances surrounding the murder.  The matrix provides three

21  choices of suggested base terms for several categories of crimes.  See Cal.Code of Regs.,

22

23        [2] The circumstances tending to show an inmate's unsuitability are: (1) the commitment
24  offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record
    of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors
25  such as a "lengthy history of severe mental problems related to the offense;" and (6) prison
    misconduct.  Cal.Code of Regs., tit. 15, § 2402(c).  The circumstances tending to show
26  suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4)
    commitment offense was committed as a result of stress which built up over time; (5) Battered
27  Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of
    recidivism; (8) plans for future including development of marketable skills; and (9) institutional
28  activities that indicate ability to function within the law.  Cal.Code of Regs., tit. 15, § 2402(d).

1  tit. 15, § 2403.  Although the matrix is to be used to establish a base term, this occurs only

2  once the prisoner has been found suitable for parole.  Id. § 2403(a).  The statutory scheme

3  places individual suitability for parole above a prisoner's expectancy in early setting of a

4  fixed date designed to ensure term uniformity.  Dannenberg, 34 Cal.4th at 1070-71.

5       "While subdivision (a) of section 3041 states that indeterminate life (i.e., life-

6  maximum) sentences should `normally' receive `uniform' parole dates for similar crimes,

7  subdivision(b) provides that this policy applies `unless [the Board] determines' that a

8  release date cannot presently be set because the particular offender's crime and/or

9  criminal history raises 'public safety' concerns requiring further indefinite incarceration."

10  Id. at 1070 (emphasis omitted).  In sum, "the Board, exercising its traditional broad

11  discretion, may protect public safety in each discrete case by considering the dangerous

12  implications of a life-maximum prisoner's crime individually."  Id. at 1071.  The

13  California Supreme Court's determination of state law is binding in this federal habeas

14  action.  Hicks v. Feiock, 485 U.S. 624, 629-30 (1988).

15       Here, the Board concluded that Petitioner was "not yet suitable for parole and

16  would pose an unreasonable risk of danger to society or a threat to public safety if

17  released from prison."  Resp. Answer, Ex. 2 at 63.  The Board considered Petitioner's

18  commitment offense and found that the murder was carried out in a callous manner and

19  did not deter Petitioner from committing additional offenses while continuing across

20  country.  Id.  The Board noted Petitioner's unstable social history, which included the

21  death of his father, problems with his mother, and having been placed in a foster home.

22  Id. at 64.  The Board noted Petitioner's educational improvements during his

23  incarceration, but found that Petitioner had insufficiently participated in self-help.  The

24  Board determined that Petitioner was in need of additional therapy and needed to improve

25  his parole plans.  Id. at 64-68.

26       In its order denying habeas relief, the superior court determined that the Board did

27  not abuse its discretion and that the factors relied upon by the Board were reasonable.

28  Resp. Answer, Ex. 4 (Petitioner's Petition for Writ of Habeas Corpus filed in the

1   California Court of Appeal at Exhibit C) (<u>In Re William Sizemore</u>, Stanislaus Superior

2   Court Order re: Writ of Habeas Corpus, Case No. 198502, (June 13, 2005)) at 1-2

3   (hereinafter "Sup. Ct. Order").  Like the Board, the superior court acknowledged

4   Petitioner's educational accomplishments. <u>Id.</u> at 1.  The superior court also observed that

5   the Board had noted two disciplinary actions, which the court characterized as significant,

6   but not major.  <u>Id.</u>  The court noted that the Board relied in part on a psychological report

7   prepared for the proceedings which reflected that while Petitioner's risk of reoffending

8   had been reduced, Petitioner's abuse of alcohol "may have contributed" to the original

9   crime, and was a "severe risk factor of dangerous behavior."  <u>Id.</u>  The superior court

10  reflected the Board's additional concern that while Petitioner had initiated Alcoholics

11  Anonymous ("AA") treatment while in prison, he had not followed through with AA and

12  had not participated in any other treatment program.  <u>Id.</u>

13      Here, the Board's decision denying Petitioner parole was based upon its review of

14  not only the nature and circumstances of the commitment offense, but also Petitioner's

15  prison disciplinary record and uneven history of attending self-help programs.  <u>See</u> Resp.

16  Answer, Ex. 2 at 63-68.  The Board properly considered the nature of the offense in its

17  decision to deny petitioner parole.  <u>See</u> <u>In re Rosenkrantz</u>, 29 Cal. 4th 616, 682-83 ("the

18  [Board] properly may weigh heavily the degree of violence used and the amount of

19  viciousness shown by a defendant").  Beyond the commitment offense, the Board found

20  other evidence that petitioner remained an "unreasonable risk of danger to society if

21  released from prison." Cal.Code of Reg., tit. 15, § 2402(a); the psychologist's report

22  alone constitutes reliable evidence to support the Board's denial of parole.  Accordingly,

23  the Board's findings are supported by "some evidence," and Petitioner's contention that

24  the parole denial was based solely on the circumstances of the offense is without merit.

25      This Court concludes that Petitioner's constitutional rights were not violated and

26  that the state court's determination was not contrary to, or an unreasonable application of,

27  clearly established Supreme Court precedent, nor was it based on an unreasonable

28  determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1), (2).

1

2

### 2. Alleged Policy of Denying Parole to Almost All Indeterminately Sentenced Inmates In Violation of Due Process Based Upon the Liberty Interest Created by California Penal Code § 3041

3    Petitioner alleges that the Board habitually ignores the requirement that only

4  particularly egregious offenses support a denial of parole.  He claims that the Board has

5  granted parole in only 1.7 percent of hearings, and that it is impossible for all of the

6  remaining offenses to be "particularly egregious."  See Petition at 10.  However,

7  Petitioner does not provide any evidence in support of his claim, nor would a 1.7 percent

8  parole approval rate necessarily indicate any systematic bias.  Cf.  California Dept. of

9  Corrections v. Morales, 514 U.S. 499, 510-11 (1995) (citing high percentage of parole

10  denials as basis for deferring suitability hearings).  Even if Petitioner could show the

11  existence of such a policy, the transcript of the parole suitability hearing and the decision

12  here show that the Board considered Petitioner's suitability on an individual basis and in

13  considerable detail.  Resp. Ex. 2.  The record as a whole reflects an individualized

14  treatment of Petitioner's case.  As described above, the Board's decision was based on

15  more than Petitioner's commitment offense and his status as a convicted murderer serving

16  an indeterminate sentence.

17    Based on the record before the Court, there is no indication that the Board's

18  decision was based on a *sub rosa* policy, as opposed to the particular factors of

19  Petitioner's case.  The superior court reviewed the factors relied upon by the Board in

20  denying Petitioner parole.  "These included the facts of the original case, intervening

21  disciplinary actions while in custody, and treatment in which the petitioner has engaged

22  while in custody."  Sup. Ct. Order at 1.  Accordingly, the superior court's decision was

23  not contrary to, or an unreasonable application of clearly established federal law, nor was

24  it an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C.

25  § 2254(d)(1), (2).

26  \\\

27  \\\

28  \\\

1

**D.  Standard of Proof for Sentencing**

2   In his traverse, Petitioner contends that the Board is precluded, under <u>Blakely v.</u>

3   <u>Washington</u>, 542 U.S. 296 (2004), from relying on any facts that were not found by a jury

4   and that any independent fact-finding by the Board violates Petitioner's right to due

5   process.  Petitioner's Traverse at 15-16.  A traverse is not a proper means of raising

6   additional grounds for relief, <u>see</u> <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir.

7   1994), and thus as a procedural matter this claim is not properly before the Court.

8   However, even if it were properly pleaded, Petitioner's <u>Blakely</u> argument is meritless.  In

9   <u>Blakely</u>, the Court held that a judge may not increase a maximum sentence based on facts

10  that are not found by a jury or stipulated to by the defendant.  <u>See</u> <u>Blakely</u>, 542 U.S. at

11  303 (the <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), statutory maximum is "the

12  maximum sentence a judge may impose solely on the basis of the facts reflected in the

13  jury verdict or admitted by the defendant").  No case in the <u>Apprendi</u> line has considered

14  the requirements for parole determinations.  <u>See</u>, <u>e.g.</u>, <u>id.</u>  At the very least, Petitioner's

15  proposed application of <u>Blakely</u> to parole hearings is not "clearly established Federal law,

16  as determined by the Supreme Court of the United States" and cannot be a basis for

17  federal habeas relief.  28 U.S.C. § 2254(d)(1), (2).

18  Moreover, the <u>Apprendi</u> line is grounded in the Sixth Amendment right to a jury

19  trial and the Fourteenth Amendment right to due process.  Even Petitioner does not

20  suggest there is a constitutional right to a jury in parole proceedings, and an evidentiary

21  standard of proof beyond a reasonable doubt would represent a massive departure from

22  pre-<u>Apprendi</u> Supreme Court precedent outlining due process requirements in the parole

23  context.  <u>See</u> <u>e.g.</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489-89 (1972).  Accordingly,

24  Petitioner's claim is without merit.

25  \\\

26  \\\

27  \\\

28  \\\

1

**CONCLUSION**

2        The Court concludes that Petitioner has failed to show any violation of his federal

3  constitutional rights in the underlying state court proceedings and parole hearing.

4  Accordingly, the petition for writ of habeas corpus is DENIED.  The Clerk shall enter

5  judgment and close the file.

6        IT IS SO ORDERED.

7  DATED:___ 7/25/07 _____

JEREMY FOGEL
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    A copy of this ruling was mailed to the following:

2

3    William Sizemore
     C-89029
     CTF - Soledad
4    P.O. Box 689
     Soledad, CA  93960-0689
5

6    Jessica N. Blonien
     California State Attorney General's Office
7    455 Golden Gate Ave
     Suite 11000
8    San Francisco, CA  94102-7004

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Denying Petition for Writ of Habeas Corpus
P:\pro-se\sj.jf\hc.05\Sizemore182den                    12